**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
:
TERESA B.,
:
:
                  Plaintiff,      :        22-CV-1226 (OTW)
:
      -against-     :        **OPINION & ORDER**
:
COMMISSIONER OF SOCIAL SECURITY,
:
                  Defendant.  :
:
------------------------------------------------------------x

      **ONA T. WANG, United States Magistrate Judge:**

On March 28, 2020, Plaintiff Teresa B.[1] applied for disability insurance benefits ("DIB"). Plaintiff filed this action pursuant to Section 205(g) of the Social Security Act ("SSA") against the acting Commissioner of the Social Security Administration, seeking review of the Commissioner's denial of Plaintiff's application for disability insurance benefits. The parties consented to magistrate judge jurisdiction (ECF 28), and have submitted a joint stipulation in lieu of motions for judgment on the pleadings. (ECF 23). For the following reasons, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED.**

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

I. **BACKGROUND**

   A. <u>**Administrative Proceedings**</u>

Plaintiff filed her application on March 28, 2020, for a period of disability and disability insurance benefits, and her claim was initially denied on August 10, 2020, and subsequently upon reconsideration on October 28, 2020. (ECF 23 at 3). On June 17, 2021, ALJ Lori Romeo denied Plaintiff's claims, and on December 7, 2021, the Appeals Council denied Plaintiff's request for appeal. (ECF 23 at 4). Plaintiff filed the instant complaint on February 14, 2022, pursuant to 42 U.S.C. § 405(g). (ECF 1).

   B. <u>**The ALJ's Decision (ECF 26)[2]**</u>

The ALJ found that Plaintiff had severe impairments in her obesity, degenerative joint disease of the ankle, and degenerative disc disease of the lumbar spine, but that her impairments did not meet or medically equal the severity of any of Listings 1.15, and 1.18. (R. at 18). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except the Plaintiff could lift and carry ten pounds occasionally and less weight frequently, stand and/or walk two hours and sit six hours in an eight-hour workday with normal breaks. (R. at 18-19). After reviewing the vocational expert' ("VE") testimony, the ALJ found that Plaintiff could not continue her past work as a ticket agent, but could work as a document clerk, bench assembler, or electronics inspector. (R. at 22-24).

---

[2] The administrative record is filed at ECF 26 and subparts. Where an ECF number is cited, a page reference will be to the ECF page number. If citing to the record ("R."), the page reference will be to the record page.

### C. Procedural History

Plaintiff commenced this action by filing a complaint on February 14, 2022. (ECF 1). The parties filed the joint stipulation in lieu of motions for judgment on the pleadings on December 12, 2022 (ECF 23). On December 16, 2022, the administrative record was filed (ECF 26), and the parties consented to magistrate judge jurisdiction (ECF 28).

## II. APPLICABLE LAW

### A. Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make clear that the moving party is entitled to judgment as a matter of law. Additionally, the Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. Substantial evidence is more than a mere scintilla. It only requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must rely on the underlying record.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the

evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B. <u>Weighing Medical Opinions</u>

For claims such as this one, filed on or after March 17, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. *See Acosta Cuevas*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2011) (collecting cases), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). Under the new regulations ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(b) (emphasis added). ALJs must consider all medical opinions and determine their respective persuasiveness considering: supportability; consistency; relationship of the medical source to the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(c)(1)–(5).

The supportability and consistency factors are the "most important." 20 C.F.R. § 416.920c(a). Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2) (emphasis added); *see also Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL)(BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Vellone v.*

*Saul*, No. 20-CV-261 (RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain his/her approach with respect to the first two factors when considering a medical opinion.") (emphasis in original). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(c).

### C. Five-Step Evaluation Process

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ makes this determination through a five-step evaluation process, for which the burden rests on the Plaintiff for the first four steps. Only after all four steps are satisfied does the burden then shift to the Commissioner for the final step:

First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful activity.

Second, the ALJ must find that Plaintiff's impairment is so severe that it limits their ability to perform basic work activities.

Third, the ALJ must evaluate whether Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that they may be presumed to be disabled. Absent that, the ALJ must then determine the Plaintiff's Residual Functional Capacity ("RFC"), or their ability to perform physical and mental work activities on a sustained basis.

Fourth, the ALJ then evaluates if Plaintiff's RFC allows him to meet the physical and mental demands of his prior employment.

If Plaintiff has satisfied all four of these steps, the burden then shifts to the Commissioner to prove that based on Plaintiff's RFC, age, education, and past work experience, that Plaintiff is capable of performing some other work that exists in the national economy. 20 C.F.R § 416.920(a)(4)(i)–(v).

### III. ANALYSIS OF THE ALJ'S DECISION

Plaintiff raises two main arguments in support of their request for reversal of the ALJ's decision: 1) the ALJ did not properly evaluate the medical opinions by failing to articulate why she did not find the treating physicians' opinions unpersuasive; and 2) the ALJ did not properly evaluate Plaintiff's testimony.

#### A. Weight of Medical Evidence

Plaintiff asserts that the ALJ failed to articulate how persuasive she found the opinions from the treating physicians and to explain why their opinions are "not supported or noted throughout the treatment records." (ECF 23 at 21). I agree.

The ALJ relies on a consultative exam by Dr. Aguilar from July 2020, and the August 2020 state medical agency expert report from Dr. Krist, and the limitations described therein, to determine that Plaintiff's physical limitations left her with the RFC to perform sedentary work with additional lifting limitations and that she "stand and/or walk two hours and sit six hours in an eight-hour workday with normal breaks." (R. at 19, 21). Dr. Aguilar opined that Plaintiff had "moderate to marked limitations" for heavy lifting, carrying, prolonged standing, prolonged walking, climbing stairs, and crouching" and moderate limitations for "bending [and] prolonged sitting," and respiratory irritants due to Plaintiff's asthma. (R. at 21). Dr. Krist's opinion relied only on review of the medical records, and was affirmed in October 2020 by another state agency medical expert who reviewed the same records and came to the same conclusion. (R. at 22). The ALJ made only cursory statements on consistency[3] and no statements on supportability in finding these opinions persuasive.

The ALJ found three opinions from treating providers from 2021 (Drs. Drakow, Herrera and Ghaw) to be "not persuasive," even though all three providers opined that Plaintiff had significant limitations for sitting, standing, absenteeism and being off-task during the day due to moderately severe pain. Dr. Drakos, who opined that Plaintiff's "moderately severe" pain would cause Plaintiff to be "occasionally" off task and absent, was not persuasive because his findings were "not consistent with the medical record" because the record "does not document any support for the off task assessment and the monthly absenteeism is speculative." (R. at 21-22). Dr. Herrera's opinion, that plaintiff's "moderately severe" pain would cause her absenteeism

---

[3] For example, the ALJ stated that these opinions were "consistent with the totality of the medical record" of "generally conservative treatment post right ankle surgery" and "generally mild clinical findings." (R. at 21-22).

7

and to be "frequently off-task," was not persuasive because "the limitations assessed are not supported or noted **throughout** the treatment records." (R. at 22) (emphasis added; persuasiveness assessment quoted in its entirety). Dr. Ghaw also opined that Plaintiff's pain was "moderately severe," and that the pain would cause Plaintiff to be off task and absent. *Id.* The ALJ found Dr. Ghaw's opinions "not persuasive, as they are also not **fully**[4] supported by the record." *Id*. (emphasis added). The ALJ then contrasted Dr. Ghaw's opinion about Plaintiff's pain with Plaintiff's testimony and treatment notes that indicated that Plaintiff was "able to lift up to twenty pounds and walk up to four or five blocks without the use of a cane," and that Plaintiff was "able to squat," and to "transition from a sit to stand position without difficulty." *Id.*

The ALJ failed to explain how opinions rendered in 2020 are consistent with the "totality of the medical record" where three treating physicians later independently came to conclusions of moderately severe pain that would limit Plaintiff's ability to sit, stand, and walk, and to consistently go to work and remain on task. The ALJ's decision does not address supportability at all. *See* ECF 23 at 25 (collecting cases to challenge supportability of Dr. Aguiar's determination that Plaintiff could sit for six hours and stand for two hours each workday). More troubling, because Drs. Krist and Vinluan based their opinions only on a review of the medical records in 2020, they could not have reviewed the findings of three treating physicians from 2021, and there is no analysis whatsoever on whether a review of those records would still have supported their opinions.

---

[4] The ALJ's use of the terms "throughout" and "fully" when discarding Dr. Herrera's and Dr. Ghaw's opinions is especially troubling because it suggests that the ALJ may have held Plaintiff to a higher standard.

The ALJ also failed to explain why three treating physicians' opinions – which were consistent with each other – were found not to be not consistent with the medical records or even the physicians' own notes. Notably, the ALJ references facts or testimony such as the ability to walk four or five blocks without a cane to mean that Plaintiff would not have been in pain with walking, standing or sitting, or that whatever pain she experienced would have contributed to her being off task or absent at times. Here, the ALJ impermissibly substituted their judgment over that of the physicians,[5] and the Commissioner cannot make *post hoc* arguments to fill in the gaps. *See* ECF 23 at 46-48.

### B. Plaintiff's Testimony

Plaintiff further asserts that the ALJ did not properly evaluate her testimony. I agree. Plaintiff testified at length about her limitations, noting, *inter alia*, that she could sit for up to 40 minutes before needing to get up to walk around, and that she could walk four to five blocks without needing a cane, and that physical therapy and injections were ineffective. (ECF 23 at 17-18). The ALJ accurately summarized Plaintiff's testimony, *see* R. at 19, but found (without further explanation) that Plaintiff's statements were "not entirely consistent with the . . . evidence." (R. at 19). While it is true that the ALJ need not enumerate her reasons for every single factor under the regulations, in this case the ALJ used Plaintiff's testimony that she could walk four to five blocks to infer that Plaintiff and her treating physicians' reports of the effects

---

[5] Although not necessary to this decision, I note that the ALJ also found that "conservative" nonsurgical treatment – *after two surgeries* – did not support findings of moderately severe pain. Unless the ALJ was in the room when Plaintiff was discussing treatment options with her physicians, it seems that the ALJ was again substituting their judgment for that of the physicians. If the prior surgeries did not fully resolve Plaintiff's pain, a decision to follow more conservative treatment is supportable, especially where Plaintiff was pregnant, nursing, and caring for a newborn during this time. (ECF 23 at 13-15)

of her pain were not persuasive, while at the same time ignoring – or at least failing to address – why or how her report of being able to sit only for up to 40 minutes was entitled to *no* weight in the ALJ's determination that Plaintiff could sit for up to six hours a day and that she would not be absent or off task.[6]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, and Defendant's Motion for Judgment on the Pleadings is **DENIED**. This case is **REMANDED** for further proceedings consistent with this Opinion and Order. The Clerk is respectfully directed to enter final judgment consistent with this decision and then close the file.

**SO ORDERED.**

Dated: March 26, 2024
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge

---

[6] Similarly mystifying, but not necessary to my decision here, is the ALJ's cursory mention of Plaintiff's morbid obesity. In the ALJ's opinion, obesity is listed as the first of Plaintiff's severe impairments, and mentions a BMI "as high as 44.6." (R. at 18, 21). Class III, or "morbid" obesity is defined as having a BMI of 40 or greater. *Class III Obesity (Formerly Known as Morbid Obesity)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/21989-class-iii-obesity-formerly-known-as-morbid-obesity (last visited Mar. 26, 2024). Nonetheless, the ALJ gives Plaintiff's morbid obesity only a glancing mention – that since Plaintiff only followed a "very conservative treatment" with dietary restrictions and "indication that claimant wanted to lose weight," the record did not indicate that Plaintiff's obesity "had any adverse impact upon co-existing impairments." (R. at 21).